## WING *v.* HOLLAND TRUST CO.

### THOMAS *v.* SAME.

*(Supreme Court, Special Term, New York County.* February 18, 1889.)

PLEDGE—SHARES OF STOCK—OWNERSHIP.

The fiscal agent of a railroad company negotiated a loan from the defendant, to be secured by a mortgage on the corporate property. Pending the execution of the mortgage, certain certificates of stock in a coal company, issued in the names of the plaintiffs, and which the plaintiffs claimed to own, were delivered to the defendant as temporary security, with the consent of the plaintiffs. A power of attorney, executed in blank, was indorsed on each certificate. Afterwards the stock certificates were handed back to the agent of the railroad company, on the delivery to the defendant of the mortgage. Thereafter, the stockholders of the railroad company having refused to ratify the mortgage, the defendant caused it to be canceled, at the request of the railroad, and obtained from the agent a return of the stock certificates. In the mean time the railroad company had passed a resolution to the effect that it was not the owner of the certificates, and that they should be delivered to the president of the coal company. But the resolution did not state who the owners of the stock were, and it did not appear that the defendant had any notice that the shares were claimed by the plaintiffs. *Held,* that defendant was entitled to recover possession of the certificates.

At chambers.

*Thos. F. Wentworth,* for plaintiff. *Hoadley, Lauterbach & Johnson,* for defendant.

PATTERSON, J.    A motion is made in each of these cases for an injunction *pendente lite,* to restrain the defendant, the Holland Trust Company, from selling or disposing of certain shares of stock of the Mount Olive Consolidated Coal & Coke Company, which the plaintiffs claim belong to them, and the disposition of which by the trust company, it is alleged, would be in violation of their rights.    The facts in each case are substantially the same, and may be briefly stated:    Frank C. Hollins & Co. were the fiscal agents of the St. Louis & Chicago Railway Company, and, in the early part of June, 1888, were concerned in a negotiation respecting the creation of a joint mortgage upon the properties of the railway company and of the coal company.    These negotiations of the companies were conducted by Hollins in New York, under the direction of D. L. Wing, who was the president of both companies at the time of the transaction out of which this controversy arises.    It was arranged that the mortgage should be made, and that the Holland Trust Company should be the trustee under it.    There were prior incumbrances on the property of the railroad company, and the interest on one of those incumbrances was about becoming due.    The company not having the funds to meet that interest, it became necessary to raise the sum of $30,000 for the purpose of paying it.    This sum Hollins undertook to raise, and procured the Holland Trust Company to agree to furnish the money.    By the understanding between the fiscal agent of the railroad company and the Holland Trust Company, $200,000 of the joint mortgage bonds were to be given to the trust company as collateral security.    These bonds were to be valid obligations of the company, secured by the joint mortgage.    Delay having occurred in the preparation of the bonds and the mortgage, and a pressing necessity existing for the use of the money, it was agreed that temporary collateral security should be deposited with the Holland Trust Company, and that security consisted of 9,497 shares of the Coal & Coke Company's stock, 3,000 of which shares belonged to Hollins, and the remainder of which Hollins had in his possession as fiscal agent of the railway company, and it had been given into his possession by D. L. Wing, and its use for the purpose of temporary security was authorized by D. L. Wing.    Each of the stock certificates had indorsed upon it a power of attorney, executed in blank, when the certificates were delivered to the trust company.    Some time after the trust company had advanced the money the mortgage was completed, and the bonds thereunder prepared, and the whole issue, which was a million dollars, was certified by the Holland Trust Company as trustees, and 200 of the bonds were retained by the trust company as security for the loan of $30,000, and the stock certificates were handed back to Hollins & Co., as the fiscal agents of the railroad company.    Some time thereafter the railroad company notified Hollins & Co. and the Holland Trust Company that the stockholders of the railroad company refused to ratify the making of the mortgage upon its property.    Such a ratification was necessary to the validity of the mortgage under the statute of Illinois, and the railroad company demanded a return and cancellation of the bonds, which demand was complied with by the trust company, and the bonds were canceled, and the mortgage was afterwards satisfied of record in various counties of Illinois in which it had been recorded.    Before canceling the bonds the trust company demanded of Hollins & Co. the return of the stock certificates which had been originally pledged as the temporary collateral for the $30,000 loan, and Hollins & Co. did return the stock certificates to that company.    In the mean time and about the 11th of August, 1888, the railroad company passed a certain resolution, to the effect that that company was not the owner of any of the stock of the Mount Olive Consolidated Coal & Coke Company, and ordered Hollins & Co., as fiscal agents of the company, to deliver the shares which are now claimed by the plaintiffs to L. H. Thomas, president of the coal company, taking his receipt therefor, in order that the same might be distributed to the parties in whose names the stock had been issued.    Those parties named

in the certificates, other than Hollins, are the plaintiffs in these two actions.

It is claimed on the part of the plaintiffs that a copy of this resolution was transmitted by mail to the Holland Trust Company; but, upon the affidavits as presented in the case, I have reached the conclusion that that resolution, if it ever was sent by Hodgens, the secretary, both of the railroad and the coal company, never reached the Holland Trust Company. It is also claimed that it appears by the deposition of Hollins, taken before the referee, that he communicated to the Holland Trust Company the contents of this resolution, but, on carefully examining his testimony, this claim of the plaintiffs is not made out; for the whole substance of his statement is that, if the trust company did not have a copy of the resolution, he gave them information, but he did not know that the stock was claimed by the owners. The resolution does not state who the owners of the stock were; and, even if it could be regarded in any sense as notice, it did not indicate to the Holland Trust Company that either of these plaintiffs were the owners of the shares. Upon these facts the plaintiffs contend that they are entitled to an injunction to restrain the defendants from disposing of the stock, their position being that the railroad company was not the owner of the shares, that they had loaned them to the president of the company for the purpose of a temporary deposit as security with the trust company, and that when the bonds were delivered and received by the company as collateral, and the certificates of stock returned to Hollins & Co., the shares were released from the pledge; and, the trust company having been notified of the claims of the plaintiffs, they could not resume possession of the stock held as collateral, because the purpose of the pledge, so far as the shares were concerned, was fulfilled, and the transaction completed. The plaintiffs' rights must, therefore, depend upon the establishment of two matters of fact: *First,* that they were in reality the owners of the shares; *second,* that the Holland Trust Company had notice of that ownership before they repossessed themselves of the shares after the surrender thereof to Hollins & Co. Upon the first of these questions of fact, there is very great doubt. as to the plaintiffs being the real owners of the shares. The acts and oral and written declarations of D. L. Wing strongly tend to show that the shares were his own property. I do not consider it absolutely necessary to hold on this motion that the plaintiffs were not the owners; but, as I have before stated, I am thoroughly satisfied on these papers that the Holland Trust Company did not have notice or knowledge of the ownership of the shares by the plaintiffs, or either of them, and that they were dealing, and were entitled to deal, with Hollins & Co. as the fiscal agents of the railroad company, and they were entitled to believe, and did believe, that the shares of stock were the property of the company, and that they were entitled to rely upon the possession of the railroad company, through its fiscal agent, of these certificates of stock, with duly-executed powers of attorney in blank; and, as the loan was undoubtedly made in the first instance upon the faith of that security, and as the substituted security was withdrawn and canceled at the request of the railroad company and of the Consolidated Coal Company, they were entitled to believe that it was the intention of the railroad company to re-establish the loan upon the basis on which it stood prior to the surrender of the shares, and their subsequent resumption of that possession was proper, for the return and cancellation of the bonds at the request of the company was a rescission by mutual agreement of so much of the contract respecting the loan as related to the giving of the bonds as security, and necessarily put the parties in the same position in which they stood with reference to security at the time the stock was first pledged to them. The purpose of that pledge was to furnish security until the valid bonds were given in substitution, and that pledge was made with the assent of the plaintiffs, on their own statement. The bonds furnished were not valid after the refusal of the stockholders of the railroad company to ratify the mortgage to which those bonds were collateral, and that

was recognized by the railroad company in demanding the cancellation of the bonds. As between the Holland Company and railroad company, the former was entitled to security, and the railroad company could not defeat its right to a repossession of the stock which was given back to it by the fiscal agent, and no demand or notice of the plaintiffs' rights, if they have any, was made or given by them to the trust company, or knowledge brought home to them which should be considered as impairing their title to that stock.

In this view of the case, I think it is clear that the Holland Trust Company had an absolute legal right to regain the possession of the certificates of stock, and there is no reason for interfering with them in the enforcement of their legal remedies against the shares upon the failure of the railroad company to pay the note for which such shares were given as collateral. The motions to continue the injunctions are denied, with $10 costs in each case, and the temporary injunctions are vacated.